**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Keith Eugene REECE, Defendant—
Appellant.**

**United States of America,
Plaintiff—Appellee,**

v.

**Arthur C. Alden, Defendant—Appellant.**

Circuit Rule 36–3.

United States of America,
Plaintiff—Appellee,

v.

Kirm Garrett Kath, Defendant—
Appellant.

Nos. 03–30140, 03–30190, 03–30153,
03–30194, 03–30195.
D.C. Nos. CR–02–00056–4–RFC, CR–02–
00056–RFC, CR–02–00045–RFC, CR–02–
00055–RFC, CR–02–00056–RFC.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 2003.

Decided Dec. 18, 2003.

Leif M. Johnson, USMO–Office of the
U.S. Attorney, Billings, MT, Carl E. Ros-
tad, Office of the U.S. Attorney, Great
Falls, MT, for Plaintiff–Appellee.

Robert Kelleher, Kelleher Law Office,
Jay F. Lansing, Esq., Moses Law Firm,
Kelly J. Varnes, Hendrickson, Everson,
Noennig & Woodward, P.C., Leif M. John-
son, USMO–Office of the U.S. Attorney,
Billings, MT, for Defendants–Appellants.

Before NOONAN, WARDLAW, and PAEZ, Circuit Judges.

## MEMORANDUM *

■ Between September 1997 and August 2001, Kirm Kath ("Kath") coordinated a scheme to defraud the government whereby he bribed various officials of the Indian Health Service ("IHS") and Bureau of Indian Affairs ("BIA") to make purchases from companies that Kath either owned or represented. The products ordered, some of which were never delivered, were purchased in excess of need and sold at inflated prices. In all, six government and three tribal employees received a total of 97 kickback payments from Kath or Kath operatives, resulting in an estimated loss to the United States of $192,015.52.

From October 1997 to autumn 2001, IHS employee Keith Reece ("Reece") authorized 28 government credit card purchases totaling $43,922 from Kath, in excess of $18,854 over the government's needs. During the same period, Kath wired Reece 12 kickback payments totaling $3,696.

Another IHS employee, Arthur Alden ("Alden"), made approximately 36 purchases of lighting supplies from Kath totaling $80,990 between 1997 and 1999. These transactions resulted in a total overcharge to the IHS of approximately $33,098. Between January 1997 and July 1999, Kath sent 42 wire transfers to Alden totaling $13,983.

In 2002, three separate indictments charged Kath with conspiracy, fraud, and bribery of public officials. In late 2002, Kath entered into a plea agreement covering all indictments. At sentencing, the district court enhanced Kath's offense level by four levels due to his aggravated role as an organizer and leader under U.S.S.G. § 3B1.1(a) and imposed 78 months imprisonment.

Reece and Alden were both named in a May 17, 2002, five-count indictment. On December 2, 2002, Alden entered into a plea agreement with the government. Accordingly, on April 9, 2003, he entered a plea of guilty to devising a scheme to use wire communications to defraud the IHS of its right to honest services, in violation of 18 U.S.C. §§ 1343 and 1346. He also agreed to pay restitution for losses suffered by the government. On December 4, 2002, Reece entered into an essentially identical plea agreement.

At sentencing for both Alden and Reece, the court found that the defendants had received bribes to facilitate a scheme to defraud the government and that the bribery sentencing guideline best covered the relevant offense. The court then applied U.S.S.G. § 2C1.1, the bribery guideline, rather than U.S.S.G. § 2C1.7, the fraud guideline. The court sentenced both defendants to 12 months and a day imprisonment.

Additionally, the court ordered Alden to pay restitution of $23,540.33. To reach this amount, the court ordered Alden to repay the amount of kickback money sent by Kath ($13,983). The court then subtracted the amount of kickback money from the government's total loss ($33,098), and ordered Alden to repay half of the remaining amount, or $9,557.

We find that the district court properly deemed § 2C1.1 applicable, in light of the cross-reference in U.S.S.G. § 2C1.7(c)(4):

> If the offense is covered more specifically under § 2C1.1 (Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right) . . . apply

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

the offense guideline that most specifically covers the offense.

As the district court correctly found, the bribery guideline covers the relevant offense better than § 2C1.7. All monies paid by Kath to Reece and Alden were bribes to perpetuate the scheme to overcharge the IHS. Appellants' effort to distinguish kickback payments from bribes lacks merit. *See United States v. Rodrigues*, 159 F.3d 439, 450 (9th Cir.1998) ("A similar term [to bribery] is 'kickback,' which can mean a rebate or a percentage payment of a gain corruptly secured ... and is often used colloquially as the simple equivalent of 'bribe.' [This] common euphemism[ ] [does not] designate[ ] a corrupt payoff different from a bribe.") (citing *Webster's Third International Dictionary* (1981)).

■ The district court also acted well within its discretion in apportioning Alden's restitution. In a case with multiple defendants, the district court is not required to apportion restitution to reflect each defendant's respective role. *See United States v. Booth*, 309 F.3d 566, 576 (9th Cir.2002) ("Although [appellant] contends that he was merely [the co-defendant's] 'errand boy,' there was sufficient evidence to support the district court's finding that [appellant] played an essential role in the fraudulent scheme.").

■ Lastly, we find that the district court correctly applied the four-level leadership enhancement to Kath. Application of the factors to be considered in determining whether a defendant was a leader demonstrates substantial evidence of Kath's control and organizational authority. *See* U.S.S.G. § 3B1.1, Application Note 4 (listing factors to be considered). Six government employees and three tribal

employees in at least three different states received a total of 97 kickback payments from Kath. Kath was the single common denominator among all criminal participants in the scheme, participated in every transaction, directly coordinated all wire transfers, and retained approximately 90% of the overall profits.

We **AFFIRM** the district court's sentencing of appellants.